## IN THE UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| 1.  **WENDY S. HOLMAN,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| v. | ) | CIV-16- 135-D |
| | ) | |
| 1.  **JIL PRODUCTS, INC., d/b/a** | ) | |
| **STATE BEAUTY SUPPLY, and** | ) | |
| 2.  **SHELLY TUBBS, an individual,** | ) | |
| | ) | **ATTORNEY LIEN CLAIMED** |
| **Defendants.** | ) | **JURY TRIAL DEMANDED** |

## COMPLAINT

**COMES NOW** the Plaintiff, Wendy S. Holman, and for her Complaint in the above-entitled action, alleges and states as follows:

## PARTIES

1. Plaintiff, Wendy S. Holman, is an adult female who resides in Canadian County, Oklahoma.

2. Defendants are:

   a. JIL Products, Inc. d/b/a State Beauty Supply ("State Beauty Supply"), an entity doing business in Oklahoma County, Oklahoma; and

   b. Shelly Tubbs, an individual who at all relevant times hereto owned and/or was employed by State Beauty Supply in Oklahoma County, Oklahoma.

**JURISDICTION AND VENUE**

3. This is a cause of action arising out of Plaintiff's former employment with Defendant State Beauty Supply. Plaintiff's claims are based on (a) failure to pay wages in violation of the Fair Labor Standards Act ("FLSA"), (b) failure to pay wages in violation of Oklahoma state law, (c) retaliation in violation of the FLSA, (d) wrongful discharge in violation of state law which prohibits terminating an employee for engaging in whistle-blowing activities, (e) assault, (f) failure to pay equal wages in violation of the Equal Pay Act, and (g) retaliation in violation of the Equal Pay Act.[1]

4. Jurisdiction over the federal claims is conferred pursuant to 28 U.S.C. § 1331. This Court has supplemental jurisdiction over Plaintiff's corresponding state law claims as they arise out of the same core of operative facts as the federal claims and jurisdiction over them is vested in this Court under 28 U.S.C. § 1367(a).

5. All of the actions complained of herein occurred in Oklahoma County, Oklahoma. Defendant State Beauty Supply is doing business in said county, and both Defendants may be served in said county. Oklahoma County is located in the Western District of Oklahoma. Wherefore, venue is proper in this Court under 28 U.S.C. § 1391(b).

---

[1] On or about October 21, 2015, Plaintiff filed an EEOC Charge of Discrimination based on violations of Title VII and the ADA/ADAAA. She filed an Amended Charge on or about November 4, 2015. Plaintiff plans to file an Amended Complaint adding said claims once they have been fully exhausted.

## **STATEMENT OF FACTS**

6.Plaintiff was hired by Defendant State Beauty Supply on or about February 22, 2014.

7.At all relevant times, Plaintiff was an hourly, non-exempt employee.

8.Plaintiff was initially hired as an Assistant for owner Shelly Tubbs and other management personnel.

9.Plaintiff was quickly recognized as a satisfactory or better employee. In fact, in or around May 2014, just three (3) months after she was hired, Plaintiff was given a merit pay increase. She was then promoted to the title of Director of Customer Service & Education (again receiving a pay increase) just three (3) months later, in or around August 2014.

10.Prior to her wrongful termination on or about September 17, 2015, Plaintiff did not receive any formal discipline. In fact, she was given an overall satisfactory performance review on or about September 15, 2015.

11.Despite her good work performance, Plaintiff was paid less than her similarly-situated male co-workers, including but not limited to co-worker Brian Sparkman. This was so despite the fact that Plaintiff and Sparkman, as well as other male employees, performed substantially equal work, requiring equal skill, effort and responsibility, and their jobs were performed under the same working conditions.

12.     Plaintiff, who was responsible, in part, for maintaining certain financial information and records for Defendant State Beauty Supply on Quickbooks, saw that she was being paid significantly less than her similarly-situated male co-workers. As such, Plaintiff began complaining to Manager of Stores Jamie Clay in or around August 2015 that she felt she was being paid significantly less than her comparitors.

13.     Plaintiff also complained that she was not being paid for meetings that she was required to attend. More particularly, throughout her employment, Plaintiff and other employees were required to attend meetings once per month. Despite the meetings being mandatory work-related meetings, Plaintiff and other employees were required to clock out and were not paid for the time spent during such work meetings.

14.     In or around late-August 2015, Plaintiff contacted the Oklahoma Department of Labor ("ODOL") to complain that she was not being paid for hours worked. The ODOL informed Plaintiff that she was not required to attend work meetings without pay.

15.     As such, on or about August 31, 2015, Plaintiff informed Manager of Stores, Jamie Clay, that she (Plaintiff) would not attend the meeting set that evening, as the ODOL told her that she was not required to attend meetings for which she was not paid. Clay told Plaintiff that Plaintiff would need to inform Tubbs.

16.     Therefore, Plaintiff contacted Tubbs and advised that she had contacted the ODOL, that per the ODOL, she was not required to attend work meetings without being paid, and therefore, she would not attend the meeting that evening.

17. Tubbs begrudgingly told Plaintiff that she would pay Plaintiff for her time during the meeting, but snapped, "I'm going to write this in your file," and told Plaintiff that Plaintiff was not going to receive a pay raise.

18. On or about September 15, 2015, Tubbs and Clay delivered Plaintiff's performance evaluation. The evaluation reflects Plaintiff received an overall satisfactory review score. And, Tubbs told Plaintiff she would receive a $0.25 per hour increase. Yet, Tubbs began requiring Plaintiff to clock out for lunch each day for fifteen (15) minutes. This was so despite the fact Plaintiff had previously been allowed to eat lunch at her desk without clocking out. Thus, while Plaintiff received a small hourly increase, she was not allowed to work the same number of hours per week, thereby reducing the total amount earned to less than what she had received (i.e., before she complained to the ODOL that Defendant failed to pay her for hours worked).

19. Further, Plaintiff suffers from depression, which substantially limits her ability to perform one or more major life activities, including but not limited to her ability to concentrate and sleep. Plaintiff previously told Tubbs and Clay that she takes anti-depressants because of her medical condition. And, in rating Plaintiff on her performance evaluation, Clay stated that "depression gets ahold of [Plaintiff] some days." Clay then listed "depression" as a "weakness" on Plaintiff's evaluation.

20. The following day, on or about September 16, 2015, Plaintiff complained to Clay that she felt the evaluation was unjust. And, the next day, on or about September 17,

2015, Plaintiff was fired.

21.     More particularly, the morning of September 17, 2015, Plaintiff tried to access QuickBooks to enter financial information therein (as this was part of her job). However, she was denied access. Therefore, she called State Beauty Supply's accounting firm for assistance with what she believed to be a computer glitch. Plaintiff was told that Tubbs removed Plaintiff's access to Quickbooks and gave such access to Clay instead.

22.     Plaintiff asked Clay why her access to Quickbooks had been removed. Clay stated she did not know Plaintiff's access had been removed, stating she would have to talk with Tubbs regarding the same.

23.     Minutes later, Tubbs approached Plaintiff and said she removed Plaintiff's access to Quickbooks in an effort to lessen Plaintiff's workload. Tubbs then called Clay into the room and asked Clay to tell Plaintiff why her access to Quickbooks was removed. In response, Clay said "for privacy and confidentiality." Tubbs then quickly stated, "and to lessen your workload," but then went on to state that she (Tubbs) had not given Plaintiff permission to "snoop" through Quickbooks.

24.     Plaintiff explained that at no point did she "snoop" through Quickbooks. Rather, based on her job duties, she was required to enter financial information in Quickbooks and in doing so, saw what other employees were paid. Based on such information, Plaintiff reiterated that she felt she was being paid substantially less than her male comparitors.

25. Tubbs became enraged, charging at Plaintiff, pushing Plaintiff up against her desk and raising her fist inches from Plaintiff's face, as though she were going to punch Plaintiff. In fear of imminent bodily harm, Plaintiff asked Tubbs if she was going to hit her. Tubbs said, "get the hell out of here," terminating Plaintiff's employment.

26. Since her termination, Plaintiff has learned that the United States Department of Labor ("USDOL") is conducting an investigation into a complaint that Defendant was not paying non-exempt employees for hours worked.

27. Upon information and belief, Tubbs admitted in the course of the USDOL investigation that she had not paid employees for hours worked.

28. As a direct and proximate result of Defendants' actions, Plaintiff has suffered injuries described hereafter.

**COUNT I: FLSA FAILURE TO PAY WAGES**

For her first cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

29. This count is brought against Defendants State Beauty Supply and Tubbs.

30. Defendants failed to compensate Plaintiff for all hours worked, in that, Defendants failed to pay Plaintiff for work meetings Plaintiff was required to attend once per month.

31. At all relevant times, Defendant Tubbs was acting directly or indirectly in the interest of Defendant State Beauty Supply with regard to wages due to Plaintiff.

32. The failure to pay Plaintiff monies earned (as described herein) is a violation of the Fair Labor Standards Act.

33. As such, Plaintiff is entitled to all damages provided for by law, including attorneys' fees and costs. And, based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

## COUNT II: FLSA RETALIATION

For her second cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

34. This count is brought against Defendants State Beauty Supply and Tubbs.

35. Plaintiff engaged in an activity protected by the FLSA, in that, Plaintiff made internal and external complaints that she was not being paid for hours worked as required by the FLSA.

36. Plaintiff suffered an adverse action, in that, her pay was cut and she was then fired after having engaged in the protected activity described herein.

37. A causal connection exists between the protected activity in which Plaintiff engaged and the adverse actions taken by Defendants.

38. As a direct and proximate result of Defendants' actions, Plaintiff has suffered lost income, past and future, emotional distress and other non-pecuniary losses.

39. As such, Plaintiff is entitled to all damages provided for by law, including attorneys' fees and costs. And, based on the willful violation of the law, Plaintiff is entitled

to liquidated damages.

### COUNT III: 40 O.S. § 165.3 FAILURE TO PAY WAGES

For her third cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows.

40. This count is brought against Defendant State Beauty Supply.

41. Defendant State Beauty Supply failed to compensate Plaintiff for all hours worked, in that, State Beauty Supply failed to pay Plaintiff for work meetings it required Plaintiff to attend once per month.

42. The failure to pay Plaintiff monies earned (as described herein) is a violation of Oklahoma state law, Okla. Stat. tit. 40, § 165.3.

43. As such, Plaintiff is entitled to all damages provided for by law, including attorneys' fees and costs. And, based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

### COUNT IV: *BURK* TORT

For her fourth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

44. This count is brought against State Beauty Supply.

45. The acts above-described constitute a violation of Oklahoma's public policy which prohibits wrongful termination and retaliation against a whistle-blower for performing an act consistent with a clear and compelling public policy, i.e., refusing to participate in an

illegal activity; performing an important public obligation; exercising a legal right or interest; exposing some wrongdoing by the employer; and performing an act that public policy would encourage or, for refusing to do something that public policy would condemn.[2]

46. Plaintiff has suffered injuries and is entitled to recovery all damages or other relief allowed by state law, including but not limited to, lost wages (past and future), emotional distress damages, punitive damages, and attorney's fees and costs.

## COUNT V: ASSAULT

For her fifth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

47. This Count goes against Defendant Tubbs.

48. The acts described above constitute the tort of assault.

49. Defendant Tubbs acted either with the intent of making a harmful or offensive contact with Plaintiff, or with the intent of putting Plaintiff in apprehension of such a contact.

50. Plaintiff was placed in apprehension of an immediate harmful or offensive contact with her person by the conduct of Defendant Tubbs; and/or Plaintiff was caused to suffer fright and terror.

51. As damages, Plaintiff is entitled to all damages allowed by state law.

---

[2] The Oklahoma Protection of Labor Act, Okla. Stat. tit. 40 §§ 160, et seq., provides that "[e]very employer in this state shall pay all wages due their employees[.]"

## COUNT VI: EQUAL PAY ACT- UNEQUAL PAY

For her sixth cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

52. This Count goes against Defendants State Beauty Supply and Tubbs

53. The acts above-described constitute violations of the Equal Pay Act.

54. Defendants paid different wages to employees of the opposite sex, i.e., Plaintiff, a female, in comparison with her male co-workers.

55. Plaintiff performed equal work on jobs requiring equal skill, effort and responsibility as her male counterparts.

56. Plaintiff's job and those of her similarly-situated male counterparts were performed under similar working conditions.

57. As the direct and proximate result of Defendants' actions, Plaintiff has suffered lost wages and is entitled to her lost income, past and future, and such remedies as the law may allow. Based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

## COUNT VII: EQUAL PAY ACT- RETALIATION

For her seventh cause of action, Plaintiff incorporates all prior allegations and further alleges and states as follows:

58. This Count goes against Defendants State Beauty Supply and Tubbs

59. The acts above-described constitute violations of the Equal Pay Act's anti-

retaliation provision.

60. Plaintiff engaged in activity protected by the Equal Pay Act, in that, Plaintiff made internal complaints that she was being paid less than her similarly-situated male co-workers despite performing substantially equal work, requiring equal skill, effort and responsibility.

61. Plaintiff suffered an adverse action, in that, her pay was cut and she was then fired after having engaged in the protected activity described herein.

62. A causal connection exists between the protected activity in which Plaintiff engaged and the adverse actions taken by Defendants.

63. As the direct and proximate result of Defendants' actions, Plaintiff has suffered lost wages and is entitled to her lost income, past and future, and such remedies as the law may allow. Based on the willful violation of the law, Plaintiff is entitled to liquidated damages.

## **REQUEST FOR RELIEF**

**WHEREFORE,** Plaintiff requests this Court enter judgment in favor of Plaintiff and against Defendants and assess actual, compensatory, liquidated damages, punitive damages, together with pre- and post-judgment interest, costs, attorney's fees and such other relief as this Court may deem equitable and appropriate.

**RESPECTFULLY SUBMITTED THIS 16th DAY OF FEBRUARY, 2016.**

<u>s/Jana B. Leonard</u>
JANA B. LEONARD, OBA# 17844
SHANNON C. HAUPT, OBA #18922
LEONARD & ASSOCIATES, P.L.L.C.
8265 S. WALKER
OKLAHOMA CITY, OK 73139
(405) 239-3800        (telephone)
(405) 239-3801        (facsimile)
leonardjb@leonardlaw.net
haupts@leonardlaw.net

JURY TRIAL DEMANDED
ATTORNEY LIEN CLAIMED